*CINCINNATI, HAMILTON & DAYTON R. R. CO. v. GEORGE K. DUCKWORTH.

1. APPOINTMENT OF A RECEIVER OF A RAILWAY COMPANY.

An order of the court of common pleas, made upon preliminary application, appointing a receiver of a railway, and enjoining the company until further order from making certain purchases, and from paying for other purchases already made, upon the ground that said purchases are *ultra vires*, is a final order within the meaning of sec. 6707, Rev. Stat., which may be reversed, vacated or modified by the circuit court.

2. EXECUTION OF A FINAL ORDER MAY BE STAYED BY THE CIRCUIT COURT.

Execution of such final order may be stayed by the circuit court, or by a judge thereof, pending the hearing of the petition in error, under sec. 6725, Rev. Stat.

3. SUCH STAY WILL NOT BE GRANTED UPON THE MERE FILING OF A PETITION IN ERROR.

Such stay will not be granted as a matter of course upon the mere filing of a petition in error, but should, ordinarily, be granted if difficult and important questions of law are raised, which, if decided in favor of the plaintiff in error, would require a reversal of the order.

4. ADDITIONAL REASONS.

Additional reasons stated for a stay upon the facts of this case.

---

* This case was disposed of by the Supreme Court, January 15, 1889, with entry as follows: "Judgment of the circuit court, rendered November 11, 1887, reversing the order of the common pleas of October 26, 1887, appointing a receiver and granting an injunction, affirmed. Also the judgment of the circuit court rendered December 14, 1887, reversing a judgment of the court of common pleas, affirmed; for the reason that it does not affirmatively appear that the indebtedness to be created by the issue of the proposed notes, will exceed the capital stock of the company."

This case was followed by the circuit court in McClung v. Coal Co., *supra*, and approved by the circuit court in Straman v. Water Works Co., 1 Ohio Dec., 346, 351. It was cited by the Superior Court in Minor v. Building Ass'n, 3 Ohio Dec., 275, upon question of right of a stockholder to take steps to wind up the corporation; also in Goebel v. Brewing Co., 2 Ohio Dec , 377, 379. It was cited by the Superior Court in Shone v. Building Co., 6 Ohio Dec., 247, upon the authority of a court of equity to dissolve a corporation.

5. AN ORDER OF THE COMMON PLEAS WILL NOT BE REVERSED UNLESS ERROR APPEAR AFFIRMATIVELY.

    An order of the court of common pleas will not be reversed unless error appear affirmatively and clearly; and to justify a reversal on the ground that the findings of the trial court are against the weight of the evidence they must be manifestly so.

6. CONSTRUCTION OF SEC. 5587, REV. STAT., REGARDING THE APPOINTMENT OF A RECEIVER.

    Section 5587, Rev. Stat., sub. 5, which provides for the appointment of a receiver in the "case provided for in this title and by special statutes, when a corporation has been dissolved, or is insolvent, or is in imminent danger of insolvency, or has forfeited its corporate rights," does not authorize the appointment of a receiver except in cases provided for in said title or by special statutes.

7. THE APPOINTMENT OF A RECEIVER IS MERELY A PROVISIONAL REMEDY.

    The appointment of a receiver is merely a provisional remedy, ancillary and auxiliary to the main action, and can only be made in an action brought to obtain some other equitable relief which the court has the right to grant, and where it appears to be necessary to make such appointment in order to preserve the property during the litigation, so that the relief awarded by the final judgment, if any, may be effective.

8. WINDING UP THE AFFAIRS OF A CORPORATION.

    In the absence of statutory authority, a court of equity has no right at the suit of a stockholder, to take any step for the sole purpose, or the primary object of which is, to wind up the affairs of the corporation, or in ordinary cases take the control and management thereof from the directors, even on the ground of mismanagement or fraud.

9. ENJOINING THE UNLAWFUL CONDUCT ON THE PART OF THE DIRECTORS OF A CORPORATION.

    A court of equity has authority, at the suit of a stockholder, to enjoin unlawful conduct on the part of the directors of a corporation; and if in such an action it may be made clearly to appear to the court that the appointment of a receiver is really necessary to effect the purpose of the suit, as for instance, if it clearly appear that unless the property is placed in the hands of an officer of the court it will be fraudulently and instantly disposed of by the directors, a receiver may be appointed. But in the absence of such necessity, and where full relief may be afforded by injunction, the appointment of a receiver is an abuse of discretion.

10. APPOINTMENT OF A RECEIVER REVERSED.

    The appointment of a receiver reversed, as being wholly unnecessary upon the facts of this case.

11. PLEDGE OF STOCK AS SECURITY BY A FORMER OFFICER OF A RAILROAD COMPANY.

    A former officer of a railroad company had pledged as security for his individual notes, common stock of the company, and other securities owned by him, and in some instances large amounts of the preferred stock of the company, which he fraudulently and wrongly signed and issued to such persons as further collateral. In many instances, the securities so pledged independently of said preferred stock, were sufficient, if not pressed to an immediate sale and if they should be sold at their real value, to pay or nearly pay the debt; and it was the judgment of the directors of the company that, if said claims with the collaterals attached could be purchased by them, they would be able in that manner to get up and cancel the preferred stock so fraudulently issued at little or no cost to the company, and thus free the corporation from the danger of having it held as valid in the hands of persons claiming to hold it *bona fide* and for value. It further appeared that such transactions on the part of the directors had already resulted to the great advantage of the company in getting up a very large amount of the preferred stock: *Held*, that such transactions are not *ultra vires*.

12. REDEEMING STOCK WRONGFULLY SOLD.

    A railroad company may expend money to take up or regain its own property or securities which have been fraudulently taken from its possession, when there is reason to apprehend that otherwise great loss may result to it.

OPINION OF THE COURT ON MOTION FOR STAY.—OCTOBER 28, 1887.

    ERROR to the Court of Common Pleas of Butler county.

SMITH, C. J.

    A petition in error having been filed in the circuit court of Butler county, to reverse the judgment of the court of common pleas of that county, rendered in the case of Duckworth against C., H. & D. R. R. Co., and others, and the circuit

court not now being in session there, application has been made to the three judges thereof at Chambers, by the plaintiff in error, for the stay of the execution of such judgment, and for the settlement of the terms upon which it shall be done; and on motion thus made, we have heard the statements and arguments of counsel for the respective parties, for and against its allowance.

It is made, as we understand it, under sec. 6725, Rev. Stat., of Ohio, which provides, substantially, that execution of judgments or final orders, other than those before enumerated in that chapter and which others do not embrace cases like this, of any judicial tribunal, may be stayed on such terms as may be prescribed by the court in which the petition in error is filed, or by a judge thereof; and we think we have full authority under this section to grant such stay.

It has been decided by the Supreme Court in the case of the Building Association v. Insurance Co., 34 O. S., 291, in construing this section as it stood before the revision of our statutes, and substantially as it is now found, that the power thereby conferred to stay executions was discretionary, and to be exercised only on good cause shown by the party moving for the stay, and that it is not to be granted as a matter of course on the mere filing of a petition in error. The court in the opinion say: "If this were so, the result would be, in this class of cases, that on the filing of the petition in the reviewing court, a stay would be ordered as a matter of course, however clear and manifest it might be that the judgment of the district court was right." In the case of Pim v. Nicholson, 6 O. S., 177, 180, the court held, that on the allowance of a stay by a judge of that court during vacation, (which was authorized by statute), to expire with the next session of the court, and an application made to the court in session for its continuance, that it would be entered of course if no objection was made; but if objection was made the party applying should show cause. In the case of Railway Co. v. Jewett, 37 O. S., 649, where the court of common pleas had appointed a receiver for the Railway Company, leave was given by the Supreme Court to the company to file a petition in error in that court, and the execution of the judgment of the common pleas was stayed by the Supreme Court; but whether it was done without an objection of the defendant in error, or a showing outside of the papers, does not appear.

As objection is made to such a stay in this case, has the plaintiff in error shown cause here why it should be done?

In the first place, it is claimed by counsel for the plaintiff in error, that on the allegations of the petition, and the findings of fact made by the common pleas court, the judgment rendered, at least so far as the appointment of a receiver is concerned, is clearly erroneous, and should be reversed on a final hearing of the petition in error.

It is perhaps difficult to say, just how far, on an application of this kind, we should examine into, or consider the errors assigned for the purpose of determining whether a stay should be allowed. As it may be granted by a single judge, it would appear quite clear that it was hardly the intention of the statute that a full discussion of the whole question involved should take place before him, or even if made to the court in session, on a mere preliminary question and before the cause was up for hearing on the merits. Indeed the Supreme Court in the case of Pim v. Nicholson, *supra* et al, before referred to, say that it would be irregular and bad practice for the court to determine, upon argument on such application, whether the errors assigned are well taken. But if the judge, or the court to which the application is addressed, on examination of the record, should be of the opinion that it was *clear* that the errors assigned were not well taken, in the exercise of that discretion which is conferred by the law, the stay might properly be refused; for as intimated by the court in the case in S., *supra*, it ought not to be done, for it would be interfering with the execution of a judgment clearly and manifestly right, and which would have to be affirmed on the hearing. But, on the other hand, we are of the opinion that if such examination of the record shows that difficult and important questions are raised by it, which

if decided in favor of the plaintiff in error, would produce a reversal of the judgment complained of, that this of itself would be cause which would justify the allowance of a stay until the matter can be fully heard, and that under such circumstances, in ordinary cases, a sound discretion would require that things be left in the condition in which the court found them until a hearing of the case could be had on the merits. Such seems to be the policy of the law, for in the great majority of cases as especially provided by the statute, judgments are stayed, as a matter of course, on the filing with the clerk of the court where the judgment is rendered, of an undertaking of the character pointed out in the law, and it is only in special cases that the judges of the reviewing court are required to grant the stay and fix the terms of the bond. But if, in addition to the fact that in the judgment of the judge or court applied to difficult questions are raised, there are other reasons for the stay, then the duty of the court would be clear.

In this case, we think, the record does disclose such a question : Whether, on the fact found by the court, it was authorized to appoint a receiver; that is, can a court by virtue of the powers conferred by sec. 5587, Rev. Stat., appoint a receiver to take charge of, manage and control the affairs of a railroad company, and run and operate its road, at the instance of a stockholder, on the state of facts found by the trial court in this case? Whether such power in fact exists, we express no opinion. We have not fully examined the question, and are not prepared to do so, and if we had an opinion on the subject, it would be manifestly improper that we should announce it on a preliminary question, or without an opportunity for a full discussion of it on the final hearing of the case. We only say now, that in our judgment, it is such a question as induces us to use the discretion conferred upon us by law to stay the execution of the judgment until the case can be heard, so far as the appointment of the receiver is concerned.

But there are other reasons which seem to us to lead to the same conclusion. It is conceded that of the 40,000 shares of common stock of this company, the owners of 39,366 thereof, during the hearing in the common pleas court, filed their protest against the appointment of a receiver, and against any action which would take the management and control of the company's road or affairs from the hands of the present board of directors. The trustees and legal representatives of all the holders of the bonds of this company, and of the bonds of other railroad companies guaranteed by it, amounting to many millions of dollars, filed like protests. The holder or holders of 384 shares of the common stock have expressed no wish upon the subject. Though the plaintiff below said in his petition that it was brought for his own benefit and the benefit of the other holders of the common stock who would unite with him in the suit, no one has done so. Mr. Duckworth is the owner of the remaining 250 shares.

When the question is, whether or not the court shall exercise its discretion and grant a stay of execution, whereby the property will remain, until the hearing of the case, in the hands of the board of directors legally chosen to manage it, ought not the wishes of the creditors of the company, and of those who own all but a small fraction of the stock, and whose interest it is that it be managed to the best advantage, have some consideration? We think such is the case. Again, the property of the corporation it is conceded amounts in value to several millions of dollars. It is now managed by a board of directors, chosen by the stockholders, men of large experience and knowledge of the affairs of the company, and against at least two-thirds of whom, as we understand it, no imputations are made as to any participation in those acts which are claimed to have resulted so disastrously to the company. That an entire change of management, taking effect at once, would be likely to produce great confusion and loss under the new regime, even if conducted with the greatest skill and wisdom, would seem probable. And in view of the fact that the interest of Mr. Duckworth in this property, for the period which may intervene between this time and the hearing of the case, can be abundantly secured and protected, as we suppose, by a proper

bond to be executed to him, we think substantial justice will be best subserved by granting this stay.

The circuit court of Butler county has not adjourned for the term, and in view of the importance of the case, we will feel disposed to give an early opportunity to the parties to have the case disposed of on its merits. As to the suspension of the judgment of the court so far as it concerns the injunction allowed, we doubt if such showing is made as requires us to do that. If the findings of the court be true, the decree as to that may be right. If it becomes important to the plaintiff in error to ask a stay as to this, before the final hearing, we will hear an application, and if good cause is shown, may also grant a stay as to this.

SWING and COX, JJ., concur.

OPINION ON FINAL HEARING.—NOVEMBER 11, 1887.

SMITH, C. J.

The questions which are presented to us in this case are these : Did the court of common pleas of Butler county, Ohio, in view of the allegations of the pleadings, the finding of facts by the court, or of the evidence in the case, err :

First.—In the appointment of the receiver, in the manner, and with the powers as set out in the judgment of the court ; or,·

Second.—In enjoining the defendants, as particularly appears in the order made?

It is conceded, as we understand it, by the counsel for the defendant in error, that both the order appointing the receiver, and that granting the injunction, may now, and in this manner, be reviewed by this court, under the provisions of secs. 6707 and 6709, Rev. Stat. It is urged by them, however, that the presumption of the law being that the judgment of the trial court was right, error must affirmatively and clear·y appear; and that to justify us in reversing the judgments, or either of them, on the ground that the findings of the trial court were against the weight of the evidence, they must be manifestly so; and if there is a conflict in the evidence, the fact that we might have found differently if it had been presented to us, in the first instance, is not sufficient. And this we think right, and do not understand that it is disputed by the counsel for the plaintiff in error.

One of the principal contentions of counsel for plaintiff in error is, that so far as the question as to the appointment of a receiver is concerned, the court had neither the jurisdiction, nor the right, on the allegations of the petition, the finding of facts by the court, or on the evidence heard, to make such order, under the statutes of the state, which point out either specially or generally, the only cases in which courts here have the right to do this. Sec. 5587, Rev. Stat., is that under which counsel for the plaintiff below claim that it may be done.

It is manifest that this case does not come within the terms of either of the subdivisions 1, 2, 3 or 4 thereof, but the counsel for the defendant in error, suggest, rather than claim, that it may come under subdivision 5 thereof, which authorizes the appointment of a receiver, " in the cases provided for in this title, and by special statutes, when a corporation has been dissolved, or is insolvent, or is in imminent danger of insolvency, or has forfeited its corporate rights." The title referred to (Title I., Div. 7) is that which regulates procedure in courts of common pleas, and superior courts, and in district (now circuit) courts on appeal ; secs. 4947 and 5912, inclusive. In that title are sections authorizing the appointment of a receiver in proceedings in aid of execution, in proceedings in attachment, and by a married woman in an action against her husband in certain cases. Secs. 5485–5539, and 5705. Chap. 5 of this Title (secs. 5651 and 5688 inclusive) provides for the dissolution of corporations and the appointment of receivers in certain cases therein mentioned; but the proceedings under these sections must be commenced in the county in which the principal place of conducting the business of the corporation is situate, and must be on the petition, either of a majority

of the directors, or of stockholders representing not less than one-third of the capital stock of the company.

It is evident, then, that this action was not brought under this chapter, and that the right of the plaintiff to have a receiver appointed therein, must stand, if at all, on subdivision 6 of the section, which gives to courts the right to make such appointment "in all other cases where receivers have heretofore been appointed by the usages of courts of equity." The claim of the plaintiff below is, that as a stockholder in this corporation, he was entitled, on the case made by him, to this relief, while that of the counsel for plaintiff in error is, conceding all of the allegations of the petition, and the findings of facts to be true, they do not make a case for the appointment of a receiver.

On the argument of this case, the counsel for the respective parties cited to us a great number of authorities on the questions thus raised, and as to the cases in which a receiver should, or should not, be appointed. We cannot undertake a critical analysis or examination of these cases, and will simply state what we regard as the result of them, so far as they bear on the case at bar. It is this:

First.—That the appointment of a receiver is merely a provisional remedy, ancillary and auxiliary to the main action, and can only properly be made by a court of equity in an action pending therein, brought to obtain some other equitable relief, which the court has the right to grant; and where it is, or appears to be necessary to make such appointment, in order to preserve the property during the litigation so that the relief awarded by the judgment, if any, may be effective; and,

Second.—While it is the law that a court of chancery, by virtue of its general equity jurisdiction, and the control it thereby has in certain cases, over persons acting as trustees for others, may enjoin any and all conduct of the directors of a corporation in violation of the trust, or of the law, at the suit of a stockholder therein, it seems clear that in the absence of a statute conferring such authority, it would have no right, at the instance of such person, to take any step for the sole purpose, or the primary object of which is, to wind up the affairs of the corporation, or in ordinary cases to take the control and management thereof from those to whom the stockholders and the law have intrusted them, on the ground even that there had been mismanagement or fraudulent conduct on the part of those in authority. But in our view, this rule has this limitation, that if on application by such stockholder to a court of equity for other equitable relief, to which it appears that he is entitled, it should be made clearly to appear to the court, thus called on to act, that the appointment of a receiver was really necessary to effect the purpose of the action, that in such case the court *would* for that purpose have power to make such an appointment. But we think it cannot properly be denied, that if such necessity did not appear to exist, but on the contrary, that full relief may be afforded without a resort to such extreme measures (which while they continue in operation, practically put an end to the exercise by the directors of their duties), a court of equity will exceed its powers, and abuse its discretion if it so act. Judge White, in deciding the Sloan case, 31 O. S., 7, uses this language: "A provisional receivership is, in effect, an injunction, and something more stringent still. It is to be granted with great caution, and only in case of pressing apparent necessity. Edwards on Receivers, 13. The appointment of a receiver is an equitable remedy, and bears a similiar relation to courts of equity, that proceedings in attachment bear to courts of law. Hence, the appointment of a receiver has been said to be an equitable execution, Jeremy's Equity Jurisprudence, 200." See also on this point Beach on Receivers, sec. 324, *et post*.

But we see no good reason to hold that this remedial process of the law, if necessary to afford full relief to a stockholder, asserting an apparently just and equitable claim against the company in which he holds his shares, is not to be granted to him. If it should be manifest, for instance, where he had filed his petition to enjoin certain illegal acts on the part of the directors, that unless the

property were placed in the hands of an officer of the court, it would fraudulently and instantly be disposed of by them to his great loss (and we can easily conceive of such a case, and it has probably arisen in the history of this very company within the year), it would seem that it would be a denial of justice to refuse him such relief. A court of equity, which may rightfully at times enlarge its jurisdiction, would be slow to stand on such a ground unless it felt absolutely compelled to do so by some inflexible rule of the law. We do not think such is the case. Authorities have been cited to us from courts of repute, which we think uphold the right to do so in such cases. And there is strong reason to suppose that such would be recognized as the rule in Ohio, when we recall the fact that the Supreme Court of the state, in two cases in which it was called upon to review and reverse the action of the trial courts, in appointing a receiver and reverse the action of the trial courts, in appointing a receiver for a corporation, at the suit of a stockholder therein, made no allusion whatever to any such doctrine; nor was it, so far as appears from the report of the cases, even suggested by the able counsel who were prosecuting proceedings to reverse such appointments, when, if it was a correct doctrine, it would have been a conclusive reason for the reversal of the order. C. S. & C. R. R. Co. v. Sloan, 31 O. S., 1; Jewett v. Railway Co., 37 O. S., 649.

In view then of these principles, was the action of the court below, in the appointment of a receiver, right?

In the first place it may be said that in our judgment the allegations of the original petition were not sufficient to justify such an appointment. The fact therein stated, that the former officers of the company had so fraudulently conducted its affairs as to cause great loss to it, and probably render it insolvent, and which had been negligently permitted by three of the present directors, while there was no pretence or claim that the present board, a majority of whom had no connection in any manner with such fraudulent acts, were not now conducting the business with the greatest wisdom and skill, obviously did not entitle the plaintiff, as a shareholder, to have a receiver appointed as prayed for, to take the possession and management of the defendant's railroad, and of all its business and affairs, simply that he might state an account thereof, and of the finances of the company, so that if it were necessary to sell, the court might so order, and make distribution of the proceeds according to law. This makes the appointment of the receiver the primary and principal object of the suit, and not an ancillary process of the court, necessary, to effectuate some other relief prayed for.

Did the averments of the amended and supplementary petition, if true, or the finding of facts by the court on it and the original petition, bring the case within the doctrine we have stated, and make the appointment of the receiver an appropriate and necessary remedy or process for the other relief? This amendment is a very long document, and it does make some allegations additional to those contained in the original petition, going into detail in the statement as to many fraudulent acts of Ives and Stayner while in office, and setting out several matters, in which it is claimed that the present board of directors had acted illegally, and to the prejudice of the company and of the stockholders, and as to these matters praying for an injunction against them and the company. But, inasmuch as the findings made by the court substantially sustained and repeated the allegations of the original and amended petitions, instead of further stating the contents of the petition as amended, we give the substance of this finding, it being that which must govern us as to the facts of the case, unless on examination of the evidence we find that it is against the clear and manifest weight thereof. It finds then, substantially, that the plaintiff is the holder and owner of 250 shares of the common stock of the defendant company, and that the action was brought by him, on his own behalf, and on that of the owners of other common stock. (It appears, however, that no one has joined with him in the action.) That the directors of the company are hostile to his interest,

and, therefore, that he properly brought this action himself, without calling upon them to do so. That the company, as it now appears, is totally insolvent —that its assets are not worth more than $8,000,000, and its actual liabilities are $17,000,000, and in addition it has guaranteed the bonds and stocks of other companies to the amount of $13,000,000. That the present condition of its financial affairs is exceedingly bad; that it owes $500,000 on notes maturing at an early day, in addition to other obligations to the amount of $600,000, issued by Messrs. Ramsey and Dexter, hereinafter referred to. That it has but a small amount of money on hand, and that the net income of the company is not sufficient to meet these obligations and pay dividends as they become due, and that its liabilities can not be paid from the income of the company, and that it has not bonds, stocks or other securities which it can sell for a sum sufficient to meet its liabilities as they mature, and also pay dividends.

In passing, it may be said as to this finding, that the undisputed evidence offered by the plaintiff himself, abundantly proved that every matured demand on the company had been promptly met, and from the showing made of the property of the company, and the earnings of the roads operated by it, there was the strongest reason to believe that it will be so in the future, and after paying the maturing obligations and the expenses of the operation of the roads, there will be sufficient left to pay a regular dividend upon the stock of the company; and, further, that the company has now on hand property, real and personal, other than "bonds, stocks or other securities" not needed for the immediate use of the company, which could readily be sold for a sum sufficient, or nearly so, to meet the large maturing debts of the company mentioned in the finding.

The court further found that $4,700,000 of the preferred stock of the company, alleged by it to be illegal, is in the possession of persons who claim to hold the same for value, and that such stock has been sold or hypothecated by Ives & Co. in payment, or security, for indebtedness of theirs; and that Messrs. Ramsey and Dexter, two of the directors of the company, have paid out already $140,000 of the money of the company, and have executed, either in the name of the company, or in their own name in behalf of the company, notes for about $600,000, for the purchase and transfer, either to them or to the company, of notes held by other persons against Ives or Ives & Co., and of certain collateral securities, consisting in part of the common stock of the company, and in part of the preferred stock of illegal issue, and also of other stocks and securities held as collateral to said loans, and that the directors had no authority to authorize this, and that there is no resolution on the minute book of the company giving them this authority, if it ever was in fact passed, of which the court declared it was not satisfied. If it was passed, the court finds that it was not known to five of the present directors; but we think the evidence in the case shows that it was in fact passed by the then board.

It was further found that a syndicate or combination of persons had been formed, composed of all the present directors of the company, and a number of other capitalists, and persons unknown to the court, who are engaged in buying up claims against Ives & Co., and the common stock and the preferred stock of the fraudulent issue, and that the purchase thereof is not in the interest of the company, as the title to the same is being taken in the names of the parties interested therein, who will be, upon purchase, the holders and owners of the same; and that if this scheme is carried out, it will enable the syndicate to dominate and control the affairs of the company, and that the directors of the corporation have no right to enter into any such combination or syndicate.

The court also, with particularity, found several instances in which Ives and Stayner, while officers of this company, had committed fraudulent acts, to its great injury, in all to the amount of about $7,000,000; and that this was suffered and permitted by the gross and culpable negligence of those who were then directors, three of whom, Messrs. Meyer, Waite and Winslow, are still acting as directors, and that they ought to be sued, and the money so lost recovered

40  C. C.      1

from them; but there is no finding that the present board has failed in its duty in regard thereto. That at some time the books of the company, or many of them, were removed to New York, and were still there, and that important meetings of the board were there held, and the proceedings thereof at the time of the trial had not been entered upon the minute books of the company, and that what was then and there done, was unknown to the directors at Cincinnati, who in some cases had no notice of such meetings. That Ives owns and controls more than two-thirds of all the common stock of the company, and by virtue thereof, he has power to keep the control of the board of directors. Subsequently, however, the court find that both Ives and Stayner, before the commencement of this suit, had made a general assignment of all their property for the benefit of their creditors to W. N. Cromwell, who is now such assignee. The result of this is, of course, that he is the owner of the stock for the purposes of the assignment, and not Ives.

The court finally found that the answer of the defendant shows correctly who, since the election in June, 1886, have been the directors of said company; and that John Carlisle has resigned since the commencement of the suit. The times at which such directors resigned and qualified are therein given. As we understand it, Messrs. Winslow, Waite, Meyer, Hooper, Rawson, Harrison, Ramsey, Dexter and Hafer (the latter taking the place of Carlisle resigned), constitute the present board, all of whom, except the first three, have come into office since the regular election in June last, and after the retirement of Ives and Stayner.

As a result of these findings, the common pleas court appointed Mr. Campbell the receiver of the company, and authorized him to take possession of its railroad, and of all its other property and franchises of every kind and description. He was directed to run and operate said road, and to keep it and its equipments in repair, collect the income of the company, and pay the expenses of operating the road; to employ, pay and discharge all agents and servants needed in the operation thereof, and generally to do all acts necessary to carry on the business successfully. And the company, its directors, officers and agents, were ordered to surrender to him the possession of such road, and its property and assets of all kinds, under the pains and penalties of the law. These orders were to remain in force until otherwise directed by the court. In addition to this, the court restrained the defendant company, its officers and agents (also until further order) from purchasing on behalf of the corporation, any claims against Ives, or Ives & Co., or any common or preferred stock thereof, or any other securities pledged for the payment of such claims; from giving the notes of the company therefor, or from contracting any liability on behalf of the company in connection therewith. From paying any moneys or other things in discharge or settlement of any of the said company's liability, or from contracting, on behalf of the said company, for the purchase of any of the claims owing by Ives, or by Ives & Co., or of the stock or securities pledged as collateral thereto, and that said company, its officers and agents, be restrained and enjoined from purchasing or redeeming any of the preferred stock of the company claimed by it to have been illegally issued.

Strangely enough, though the court had expressly found the fact as to the existence of the syndicate and combination, and its purpose, and that all of the directors were parties thereto, and that it was in violation of their duty, and that they had no right so to act, there is no injunction founded thereon against the directors being parties thereto, or engaging therein. This we presume was omitted by mistake or oversight.

If now it be conceded that these findings of facts are sustained by the evidence brought before us by bill of exceptions, the question occurs, whether in view of the legal principles stated by us, as those which in our opinion furnish the rule by which we should be governed, the order appointing the receiver was a proper one.

The difficulty which presents itself to us is this: Do the facts as found, or the evidence in the case, show any necessity whatever for a resort to this extreme measure? Were any good reasons disclosed in either, to render it at all probable that the present board of directors would not at once, and in good faith, obey an injunction against them as actually entered by the court? If it be admitted that they have erred in judgment in the purchase of these claims against Ives,, and the collaterals attached thereto, and have done that which the law forbids in such purchase, (and this is all that is found, and there is nowhere any finding of bad faith on the part of the directors in such acts), and the court enjoins them from such acts in the future, and forbids the payment, from the assets of the Company, of obligations already contracted therefor, what is there in the case to raise the presumption that the order will not be obeyed? We are not able to see anything which will justify such an opinion. On the contrary, the fair and strong presumption, in the absence of anything suggesting the contrary, would be, that these directors, to whom the stockholders in this time of trial and peril, with knowledge of the facts, have entrusted their interests, and who are shown beyond all controversy to be men of great sagacity and wisdom in business affairs, and who apparently are justly entitled to the confidence of the community in which they live, several of whom have in time past been connected with the management of the affairs of the company in the times of its highest and most extraordinary prosperity, and who are now well advised as to its interests, and all of whom appear exceedingly diligent in their efforts to bring about a better condition of things, would, as good citizens, obey any order the court might make, even if in their efforts to aid the company they have gone further than they should have done. If this be so, or there be nothing to induce a reasonable belief to the contrary, why should there be, on a preliminary application for that purpose, a judgment of the court, taking the immense property of this company, valued by the court at $7,000,000, including several hundreds of miles of railroad in active and successful operation, employing, it is said, thousands of persons in its various departments, from the hands of the directors, and placing it in those of an officer of the court, however competent he may be? And there is certainly less reason for it, when it is shown, as in this case, that of the 40,000 shares of the capital stock of the company, the owner of 39,366 thereof, and the representatives of the whole of the immense bonded debt of the company, and of the stock and bonds of other companies guaranteed by it, in this proceeding here, made known to the trial court that they earnestly protested against the appointment of a receiver, and their desire that the affairs of the company should remain in the hands of the present directors, in whom they express entire confidence.

If then the appointment of a receiver is not so much a matter of discretion with the court making it, as to prevent its being reviewed, these are facts and reasons which, in our judgment, go very far to show that the appointment in this case was wholly unnecessary, and therefore erroneous. That it can, as a matter of law, be reversed for this reason, we think clear. Judge White, in his decision in the Sloan case, in answer to the claim made on the part of the defendant in error there, that the question of the appointment of a receiver was a matter resting in the discretion of the court, says: "As a general proposition this is true. But before judicial action can be justified on the ground of discretion, the case must be one calling for discretion. The power to appoint or discharge a receiver is not an arbitrary power. The cases in which the power may be exercised, are prescribed by law, and it is only in such cases that the power can be legally exercised. If the petition makes no case for the appointment of a receiver, or if the appointment was originally proper, yet under the changed conditions it is clear from undisputed facts, that he ought not to be continued, a refusal of the court on proper application to discharge him, is judicial error." Citing 2 Wall., 510, and 8 Paige, 482.

In view then of the finding by the court, and the other undisputed facts appearing in the evidence, we feel clear that there was no such showing made as would justify the appointment of a receiver; that it was wholly unnecessary to afford full relief to the plaintiff, if he was entitled to the injunction prayed for and granted, and therefore that in the appointment there was judicial error.

The next inquiry is, was there error in the granting of the injunction? As to this we say that even on the finding as actually made with regard to the dealings of Messrs. Ramsey and Dexter, as to the purchase of the claims against Ives and the collaterals pledged therefor, and standing alone, we do not think it justifies the injunction as made. But when we consider the evidence produced in regard to it—and it is wholly undisputed—it seems entirely clear to us that it should not have been granted. It shows that the money was paid, and the obligations referred to were given, by Ramsey and Dexter under this state of facts: That Ives, and Ives & Co., had borrowed from divers persons, for their own use, large sums of money, and as security therefor had pledged to the holders of their notes, large amounts of the common stock of this company, and other securities owned by him, and in some instances immense blocks of the preferred stock of the company in his hands and which he fraudulently and wrongly signed and issued to such persons , as further collateral for the said loans. That in many instances the securities so pledged, independently of the said preferred stock, were abundantly sufficient, if not pressed to an immediate sale, and if they could be sold at their real value, to pay the debt for which they were pledged, and in others nearly so; and it was the judgment of the board, that if said claims against Ives, with the collaterals attached, could be purchased by them, that they would thus be able to get up and cancel preferred stock so fraudulently issued, at little or no cost to the company, and thus free the corporation from the danger of having it held as valid, in the hands of persons claiming to hold it *bona fide* and for value. And it is further shown that these transactions already resulted to the great advantage of the company in getting up a very large amount of this issue of stock.

It is to be noted that there is nothing whatever in the finding of facts by the court, or, so far as we see, in the evidence, to suggest even, that the money thus expended by these gentlemen, or the obligations issued by them, were used to purchase those claims and the collaterals for the benefit of the syndicate spoken of in another finding of the court. If it did so appear, we would not for a moment hesitate to say that the injunction was right, and should be affirmed. The idea that the directors of a company should use its money and credit in the purchase of such claims, to be turned over to the benefit of a syndicate of which they were members, could not be tolerated for a moment. But as we have said, no such claim is made, and it is not the ground upon which the court based its judgment. Its finding was, that any such transaction was void, as *ultra vires*. The court, in effect held, as we understand it, that a company organized to build and organize a railroad, could not, in any case, buy a note of another person, and thereby obtain a title to, or possession of, its own securities held as collateral therefor, no matter how advantageous the transaction may have been to the corporation, because it was not organized to deal in notes or its own securities. This we think is going altogether too far. It may be conceded that such a company has not the right to engage in the brokerage business, or as a business to buy and sell the notes of others, or deal in its own securities. But we think it clear that emergencies may arise, when transactions of this kind may properly be made, and surely the company may expend money to take up or regain its own property or securities which have fraudulently been taken from its possession, when there is reason to apprehend that otherwise great loss may result to it. Who would doubt, for instance, if a suit or any number of them were prosecuted against the company, involving the validity of such preferred stock, the right or duty of the directors, in the exercise of a sound and honest discretion, to compromise such actions, and pay money or execute the obligations of the

company to take up such stock? If it were otherwise, and the directors were not thus at liberty to protect the interests of the company, it would seem that the law is greatly at fault. We do not think that such is the law.

In our opinion too, the purchase by the company of the notes of Ives, to which, as found by the court, were attached, as collateral, other securities, including common stock of the company owned by him at the time it was so pledged, and preferred stock of the fraudulent issue, was not in fact a purchase of its own stock, nor was it in violation of any principle of law. So far as such preferred stock is concerned, it was only a mode of regaining the possession of that of which the company had been illegally deprived. Being utterly invalid, as between it and Ives, as having been so fraudulently issued by the latter, when recovered by the company, it was so far as he or his assignee was concerned, as if it had never been issued, and was not the preferred or other stock of the company.

And by the adoption of this plan, the company did not, in fact, become the owner of the common stock thus attached to the notes purchased by it, so as to become a stockholder in its own corporation, so far as the finding of fact or the evidence discloses. There was nothing to show how Ives had endorsed or transferred this common stock to the payees of the notes as collateral thereto, or that it had ever been so transferred on the books of the company out of his name, or that the company since the purchase of the notes, had ever assumed by virtue thereof to act as a shareholder in its own corporation by reason of such transaction, or to do anything else than to hold it as a pledge for the payment of the notes of Ives so purchased, with power to sell it to pay the debt. And in our view, Ives before his assignment, and his assignee thereafter, was the owner thereof, subject to the right of the company to sell, as before stated, if the debt was not otherwise paid. And thus, there now is an owner thereof other than the company, who as a shareholder in the corporation, may be called upon if necessary to do so, to respond to the double liability, imposed by the statute on the shareholders.

We are prepared to indicate our opinion as to another finding of the court, and to state what should have been the holding of the trial court as to that, and what the action of this court should be in relation to it. I refer to that which relates to the formation of the syndicate or combination to purchase the common stock, and the preferred stock illegally issued, for the benefit of such syndicate. We had supposed until a few hours ago, that all of the directors who were parties to the action below, and who as such were enjoined by the court, as before stated, were parties to the proceeding in error; but it seems that such is not the fact, and that they are not before the court for any action as to them.

But in view of this finding, and the argument made upon it, we deem it not improper that we should still state our views upon the question, as it may be hereafter raised in the trial court. If on the finding so made by the court, an injunction had been granted, restraining the directors from any participation therein, we would not have interfered with it, unless we had been satisfied that it was clearly against the weight of the evidence. So far as the purchase of the preferred stock is concerned, it seems to us beyond question that the directors should not engage with others in its purchase for the benefit of such syndicate. The company by its directors is asserting its invalidity, as having been fraudulently issued by Ives. And yet, if the finding be true, they with others are purchasing it, not for the benefit of the company which they represent, but in their own interest, and for their own benefit. It is a matter of course that if this syndicate becomes the owner of it, its interest is opposed to that of the company.

The latter by its directors believing in its illegality, would be bound to resist its allowance as valid. The syndicate as the owner of it would be interested to uphold its validity. It would seem to be manifestly improper that those who have control of the affairs of the company, and who are acting on its behalf, and as trustees for others, and whose first duty, while they continue to occupy such

position, is to those whom they represent, should place themselves in such an attitude, and a court of equity, on a proper showing that such was the case, should interfere to prevent it.   And for somewhat similar reasons we greatly doubt the propriety, or legality even, of the directors of the company, especially at such a time as the present, uniting with such a syndicate for the purchase of the common stock of the company, or of a controlling interest therein.

It may be conceded that ordinarily a director, as an individual, has the right to deal in the stock of the company which he represents, and to buy and sell the same at his pleasure.   He is required to hold stock in order to be a director; and the fact that his purchase or holding is large, is not objectionable, as the presumption would be that his interest in the welfare of the company would be somewhat in proportion to the amount of his stock.   Nor can it be said as a matter of law, in our judgment, that such directors might not unite with other persons in the purchase of such stock, and even of a controlling interest therein. Such a thing might be of a great advantage to the corporation and to its stockholders.   But it should certainly be fairly done, and not under circumstances that would induce the opinion that the contrary was the case.   We are strongly impressed with the idea that in the peculiar circumstances which surround this company, at this time, when it is conceded that many millions of its assets have been lost by the fraudulent conduct of a former officer or officers, and its credit and standing thereby greatly injured and imperilled, and when the selling price of its stock has thus been greatly reduced, and as shown by the testimony of some of these directors, to a sum far below its real value, that it would not be fitting or proper, or in accordance with their duties as trustees, for the directors to enter into such a combination and arrangement as the common pleas court has found has been entered into by them.   In such a case, manifestly their interest, as members of such syndicate, would be to purchase the stock at as low a price as possible, and to this end to depress it.   As directors, it would be their duty in this emergency to use their best efforts to advance the value, to restore confidence therein, and to advise those holding the stock, who might wish to sell, of its real worth, and not to place themselves in a position where the temptation would be to use their superior knowledge, acquired by virtue of their position, in the purchase of the stock at a price below its real value; for, here again their interest as purchasers and as trustees would seem to conflict and render it improper for them to occupy both positions at the same time.

Whether the finding of the court as to the existence and terms of the syndicate and the connection of the directors with it, is supported by the evidence, may be a matter of doubt.   All through the testimony of the directors are statements which would lead to the belief, that so far as any purchase of the preferred stock was concerned, however, made, by them, that it was for the benefit of the company.   It is admitted, however, by some of them, that a syndicate had been formed for the purchase of the common and preferred stock of the company, and a paper signed by several of them and others, containing the terms of the arrangement.   Who in fact did sign it, or what its terms were, or whether it ever became operative, does not appear.   No copy of it was produced in evidence, though the counsel for Mr. Duckworth were certainly diligent and persistent in their efforts to do so.   We think that the trial court under the circumstances disclosed, was authorized to presume from the neglect of the defendants, or their refusal to produce such paper, when requested, when it was doubtless in their power to do so, that it was such as the plaintiff claimed it to be, and if we had to consider the question, we could not now say that the finding was against the weight of the evidence.

It is hardly necessary to say that what purports to be a copy of that paper, which without any signature to it, was attached to the affidavit of Mr. Duck- worth, offered to us in opposition to the motion of counsel for defendant for a stay of execution as to the injunction granted, and which was commented upon by the counsel for defendant in error in argument, cannot be considered by us on

the hearing of this case on error, or have the slightest weight in the deter-
mination of any question of fact.   No new evidence can be offered on the hear-
ing of this error case.   It must be determined solely on that submitted to the
trial court.

The result of our holding then is, that both the order appointing the
receiver, and that enjoining the company, are erroneous, and must be reversed.
The case will be remanded to the court of common pleas for such other proceed-
ings as may be warranted by law.

SWING and COX, JJ., concur.

R. D. Marshall, Thomas Millikin, and Ramsey & Maxwell, for plaintiff
in error.

Kebler & Jelke, and Jordan & Jordans, for defendant in error.

---

541                       MOTION FOR NEW TRIAL.